G. S. GUERNSEY *v.* WM. M. KENDALL AND WIFE.*

[IN CHANCERY.]

*Mortgage. Owner of Equity of Redemption when not entitled to be Subrogated to Rights of Mortgagee. Presumption.*

1. The bill alleged that the orator purchased an equity of redemption,—a farm covered by several mortgages; that the defendants owned two, the second and fourth, on the premises; that, as they had foreclosed their first, and the decree about becoming absolute, the orator paid the amount thereof; that they had purchased the first mortgage on the farm, and the orator having paid them therefor took an assignment to himse'f; that he had bought the third mortgage, and it had been assigned to him; and prayed that the defendan's repay to the orator the amount of the decree, and of the first mortgage, so paid to them, and, also, of the third mortgage, or be for:cl sed. *Held.* on demurrer to the bill, that it should be dismissed; that the orator took only the rights of the mortgagor; and that by payment of a part of the incumbrances, he could not be subrogated to the rights of the incumbrancer whose debts he had paid, and by such subrogation defeat the liens of other incumbrancers whose rights are prior in time to his conveyance of the equity of redemption; and there would be the same result if the bill were amended stating that the orator held the premises in trust for the benefit of a fifth mortgagee.

2. The purchaser of an equity of redemption by deed without covenants takes the estate charged with the payment of the mortgage debts; and, it is presumed, in the absence of any special contract, that what he paid, or agreed to pay, was the price less their amount.

HEARD on demurrer to the bill, May Term, 1880, Windsor County, BARRETT, Chancellor. Demurrer sustained and bill dismissed. The facts are stated in the opinion of the court, except the orator in his brief, if the decision of the court was against him, asked leave to amend his bill, by stating that the conveyance of the equity to him was by quit-claim deed in common form; that he had no interest in the farm, and that he held the same in trust for the benefit of a fifth mortgagee.

* Heard at General Term, 1881.

*J. J. Wilson*, for the orator.

The principle is well settled that if a subsequent incumbrancer or one who has acquired a legal or equitable interest in mortgaged premises, pays off a prior incumbrance in order to protect or preserve his interest in the premises, such payment will operate as an assignment of such prior mortgage, and the person so paying can keep it alive and set it up as against intervening incumbrances. *Millspaugh* v. *McBride*, 7 Paige, 509 ; *Card* v. *Putmon*, 7 Me. 102 ; *Thompson* v. *Chandler*, 7 Me. 377 ; *Pool* v. *Hathaway*, 22 Me. 85 ; *Gibson* v. *Crehore*, 3 Pick. 475 ; s. c. 5 Pick. 146 ; *James* v. *Morey*, 2 Cow. 284 ; 1 Jones Mort. 869 ; *Downer* v. *Wilson*, 33 Vt. 1 ; *Payne* v. *Hathaway*, 3 Vt. 212 ; *Walker* v. *King*, 44 Vt. 601 ; s. c. 45 Vt. 525 ; *Spaulding* v. *Crane*, 46 Vt. 292.

The orator was the owner of the homestead interest ; and as such owner he had all the rights therein vested in his grantors. The homestead was surety for the first mortgage debt to defendants. The wife's right to all the rights of suretyship is unquestioned. But a surety is entitled to be subrogated to the rights of the creditor. *Stevens* v. *Gould*, 26 Vt. 676 ; *Jhons* v. *Reardon*, 11 Md. 465 ; *Ayers* v. *Husted*, 15 Conn. 504 ; 1 Lead. Cas. Eq. 158 ; *Stevens* v. *Goodenough*, 26 Vt. 685 ; *Lamb* v. *Mason*, 45 Vt. 500.

The orator can stand on the Cardell mortgage. *Bullard* v. *Leach*, 27 Vt. 491 ; *Wilson* v. *Burton*, 52 Vt. 394 ; *Black* v. *Gorman*, 5 Serg. & R. 36 ; *Johnson* v. *Harden & Avery*, 45 Iowa, 680 ; *Belmont* v. *Coman*, 22 N. Y. 438 ; *Trotter* v. *Hughes*, 12 N. Y. 80 ; *Tainter* v. *Hemingway*, 22 N. Y. 458.

*Norman Paul*, and *French & Southgate*, for defendants.

The orator voluntarily purchased of Steele his equity of redemption, subject to all the incumbrances. He thus assumed all the liabilities and sustained the same relation to the several mortgages that the mortgagor did. It thus became his duty to pay them ; and whenever he made a payment of one, it thereby became extinguished and relieved the estate of so much of the burden resting upon it. 1 Wash. Real Pr. 563, 567 ; *Devereaux & Meserve* v. *Fairbanks*, 52 Vt. 587 ; *McDaniels* v. *Lapham*, 21 Vt. 222 ; *Popkin* v. *Bumstead*, 8 Mass. 491 ; *Marsh* v. *Pike*, 10

Paige, 595; *Townsend* v. *Ward*, 27 Conn. 610; *Thompson* v. *Thompson*, 4 Ohio, 333; *Warring* v. *Ward*, 7 Vesey, 331; *Russell* v. *Piston*, 7 N. Y. 171.

The presumption is that he assumed the mortgage debts. 1 Hilliard Mort. 343, 357; 2 Story Eq. s. 1248; *Halsey* v. *Reed*, 9 Paige, 445, *Lechmere* v. *Charlton*, 15 Ves. 193; *Russell* v. *Piston*, 7 N. Y. 171; *Blyer* v. *Monholland*, 2 Sandf. Ch. 478; 2 Lead. Cas. Eq. 97, 230; *Eaton* v . *Simonds*, 14 Pick. 492; 1 Jones Mort. ss. 858, 864; *Gill* v. *Lyon*, 1 Johns. Ch. 446; *Russell* v. *Kinney*, 1 Sandf. Ch. 34.

The opinion of the court was delivered by

ROYCE, J.    On the 20th day of May, 1867, one Daniel H. Steele was the owner of a farm in Warren, Vt. On the same day he executed a mortgage of the farm to the town of Warren to secure the payment of a note given by him for the sum of $300. On the 29th of July, 1871, the said Steele, being indebted to the defendant Roxana Kendall, in the sum of $1240, executed his note for that sum payable to her on demand with annual interest, and to secure the payment of said note he, with his wife, executed a mortgage to her of the same farm.

On the 2d day of November, 1871, the said Steele executed a mortgage of the same farm to James Cardell to secure the payment of two notes amounting to the sum of $116.77. On the 8th day of April, 1872, the said Steele, being indebted to the defendant Roxana in the further sum of $350, executed his note payable to her for that amount and a mortgage of the same farm to secure its payment.

On the 24th day of April, 1877, the orator bought said premises subject to said incumbrances (except the homestead interest of the wife of said Steele,) and took a conveyance thereof which was duly recorded. On the 1st day of May, 1878, all of said notes secured by said mortgages remaining unpaid, the said Roxana, joining with her husband William M., the other defendant, brought a petition to foreclose the mortgage given to the said Roxana on the 29th of July, 1871, to secure the payment of the note for $1240, and made the orator, James Cardell, Daniel H. Steele and

his wife parties defendants. The petitioners obtained a decree of foreclosure against the defendants, and the time for redemption was fixed at or about the 10th of December, 1879. After said petition for foreclosure had been brought, the said Roxana bought or paid the note given by Steele to the town of Warren, and secured by the mortgage executed on the 20th day of May, 1867. On the 24th day of November, 1879, the orator bought of the said Steele and wife their homestead interest in said farm, and took a conveyance thereof which was duly recorded. On the 3d day of December, 1879, and after said decree of foreclosure had been obtained, the orator bought of James Cardell the notes and mortgage which were given to him by Steele on the 2d day of November, 1871, and they were duly transferred to him by said Cardell.

The orator, on the 8th day of December, 1879, for the alleged purpose of protecting his interest in said farm, paid to the said Roxana the sum of $2113.24, being the amount of said decree and interest at that time, thereby redeeming said premises from said decree; and on the same day, for the like purpose, paid to her the amount, being $385.89, then due on the note given by Steele to the town of Warren, and secured by the mortgage dated May 20th, 1867, and the note was delivered to him. This bill is brought to compel a repayment to the orator of the sums so paid by him to the said Roxana, and prays that in default of such repayment the defendants may be foreclosed of all equity of redemption in the premises, and for such further relief as the nature and circumstances of the case may require.

If the mortgagor had paid the incumbrances which were paid by the orator, it would have been the payment of his own debts which he was obliged to pay to relieve his estate. The orator, by the purchase of the equity of redemption acquired the estate of the mortgagor. He had no greater estate to convey than the right to pay off the incumbrances then resting upon the premises, and by so doing his grantee would become the owner of the estate. In the absence of an agreement to pay incumbrances it is optional with the grantee of an equity of redemption to pay them or not. If he would preserve his estate in the premises upon

which the incumbrances rest, he must pay them; he may give up
the property in satisafction of the liens upon it.     He cannot by
the payment of a part of the incumbrances be subrogated to the
rights of the incumbrancers whose debts he has paid, and by such
subrogation defeat the liens of other incumbrancers whose rights
are prior in time to his conveyance of the equity of redemption.
The mortgaged premises remained a security for the debts which
the mortgages were given to secure after the equity of redemption
had been conveyed to the orator the same as before; and inasmuch
as the orator has only the interest which the mortgagor had in the
mortgaged premises, it is difficult to see how he can be subrogated
to any rights that the mortgagor could not have been subrogated to.

One who purchases an equity of redemption by a deed without
covenants takes the estate charged with the payment of the mort-
gage debts, and it is presumed, in the absence of any special con-
tract, that the amount paid or agreed to be paid was the price of
the property purchased less the amount of the mortgages, and it
would be for the purchaser and not the seller to discharge the
incumbrances.   1 Jones on Mortgages, s. 736;  *Gayle* v. *Wilson*,
5 Rep. 667.    The orator alleges that he bought said premises
subject to said incumbrances;  and it was held in *Sweetser* v.
*Jones*, 35 Vt. 317, that where one purchases land expressly sub-
ject to a mortgage the land conveyed is as effectually charged with
the incumbrance of the mortgage debt as if the purchaser had
expressly assumed the payment of the debt, or had himself made
a mortgage of the land to secure it.

The purchaser of a mere equity of redemption in the absence
of an agreement to pay the mortgage debt is not personally liable
for it; the mortgage debt however, remains an incumbrance upon
the estate.    1 Jones on Mortgages, s. 738. The orator in making
the payments to the defendants was paying debts which he was
obliged to pay to redeem the estate, and it was optional with him
to redeem it or not.    After having elected to redeem a court of
equity will not aid him in recovering back the money that he has
so paid.    If such a decree should be made as the orator has
prayed for and the defendants should elect to pay back the money
received from the orator, the parties would then stand relatively

to each other and the estate the same as if no proceedings had been had to foreclose the mortgage ; if they should elect not to pay back the money, they are to be deprived of the security given by virtue of their second mortgage, and that, too, by the act of the party who executed the mortgage in conveying away, without the privity of the mortgagee, his equity of redemption. It was held in *Wade* v. *Howard*, 6 Pick. 492, that the purchaser, under an execution against the mortgagor, of the right to redeem from two mortgages, since he acquires only the interest of the mortgagor, cannot, upon taking an assignment of the first mortgage, set it up as a source of title against those who claim under the second mortgage.

The facts stated in the orator's bill do not make a case that entitles him to be subrogated to the rights of the defendants under their first mortgage so as to enable him to defeat the defendants' security under their second mortgage. The orator, in making the payments that he did make, as we believe, made them upon the understanding and belief that they were payments he was bound to make to relieve his estate. They could not have been made with the expectation that the order in which he might pay the incumbrances resting on the property would furnish occasion for invoking the doctrine of equitable subrogation to enable him to squeeze out other incumbrances of equal validity with those he had paid. The amendment the orator proposed to make to his bill, if allowed, would not aid or strengthen his claim. The fact that he did not pay anything for the transfer to him of the equity of redemption, and took the title for the benefit of a fifth mortgagee, would lead to the belief that the consideration for the transfer, as understood by the parties to it, was that the orator should pay off the incumbrances resting upon the property.

The decree of the Court of Chancery dismissing the bill is affirmed and cause remanded.